■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RODERICK MACK PARKER, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Spodek, J.), rendered September 16, 1981, convicting him of murder in the second degree, robbery in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment modified, on the law, by reversing defendant's convictions of murder in the second degree and robbery in the first degree, and the sentences rendered thereon, and those counts of the indictment are dismissed. As so modified, judgment affirmed. The defendant was indicted for, *inter alia,* intentional murder, felony murder, and robbery as a result of an incident occurring at about 1:00 A.M. on August 27, 1980 at a park located at Kingston

and Atlantic Avenues in Brooklyn. That evening, Brian Calder, Calvin Calder, Tyrone Hampton, Kenny Brown, Anthony Lee and a few other youths were playing basketball at the park. During the course of one of the games, an argument ensued between Anthony and Brian. When Brian walked away from Anthony, the latter followed him and called him names. Whereupon, Brian slapped Anthony in the face. Anthony then ran from the park, indicating that he was going to get his gun. After Anthony left the park, Brian also left, but in the opposite direction. He did not return to the park that night, although Calvin, Tyrone and Kenny stayed on. A few minutes later, Calvin also left the park. As he was leaving, he saw Anthony, Anthony's brother Scott, and defendant. Calvin heard defendant say "Is that him?" The three youths looked at Calvin, but then proceeded into the park. When Anthony got inside the park, he asked Kenny where Brian was. When he learned that Brian had gone home already, Anthony said that he was going to "take it out" on Kenny and Tyrone. Whereupon Anthony started to punch Tyrone and Kenny. The defendant and Scott joined in the fight. During the fight, defendant took a .25 caliber pistol out of his pocket and smacked Kenny in the head with the side of the gun's barrel. The blow did not leave any mark on Kenny's face. Then Kenny fled from the park. Meanwhile, Tyrone was still in the park, sitting on the ground. People's witness Michael Young, who had come into the park just prior to the fight, testified that he observed Anthony take Tyrone's sneakers off and throw them across nearby train tracks. Kenny Brown, however, testified that Anthony and Scott each took off one of Tyrone's sneakers. Scott gave the sneaker he had taken off to Anthony. He observed Anthony take the sneakers and run with them. According to Michael Young, just before Anthony removed Tyrone's sneakers, he remarked "[y]ou're going home barefooted tonight". Defendant who had been standing nearby holding the gun to Tyrone's head then said to Tyrone: "Do you see this man, do you see this, you tell your home boys that I'm not playing". Young observed defendant hit Tyrone with the barrel of the gun, at which point, a shot went off, hitting Tyrone in the temple. On cross-examination, Young testified: "I know he didn't have his hand on the trigger." At the trial, the jury acquitted the defendant of the count of the indictment charging him with intentional murder but found him guilty of felony murder (see Penal Law, § 125.25, subd 3). On this appeal, the defendant contends that the evidence was legally insufficient to sustain the conviction for felony murder because the underlying felony, to wit, robbery of the sneakers, was not established. For the following reasons, we agree with the defendant's position and hold that the evidence was legally insufficient to establish that a robbery occurred. Section 160.00 of the Penal Law defines robbery as "forcible stealing" which is committed during "the course of committing a larceny" (see, also, *People v Banks,* 55 AD2d 795). Subdivision 1 of section 155.05 of the Penal Law defines larceny as follows: "A person steals property and commits a larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." Further, subdivisions 2, 3 and 4 of section 155.00 of the Penal Law give the following definitions: "2. 'Obtain' includes, but is not limited to, the bringing about of a transfer or purported transfer of property or of a legal interest therein, whether to the obtainer or another. 3. 'Deprive.' To deprive another of property means (a) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (b) to dispose of the property in such manner or under such circumstances as to render it unlikely that an owner will recover such property. 4. 'Appropriate.' To appropriate property of another to oneself or a third person means (a) to exercise

control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (b) to dispose of the property for the benefit of oneself or a third person." Arnold D. Hechtman in his Practice Commentaries (McKinney's Cons Laws of NY, Book 39, Penal Law, § 160.00, p 195) writes: "(1) In defining robbery in terms of *larceny* committed by the use · or threatened immediate use of physical force, the revision necessarily restricts its application to trespassory takings with larcenous intent: *namely with intent permanently or virtually permanently to 'appropriate' property or 'deprive' the owner of its use (§§ 155.00 [3, 4], 155.05 [1]), as distinguished from a 'borrowing' type of intent to obtain temporary use or cause temporary loss.* The former definition, on the other hand, being in terms of·any 'unlawful taking' (§ 2120), appeared not to require a 'taking' amounting to larceny. According to its language at least, one who assaulted another for the purpose of obtaining the use of his car for a few minutes would be guilty of robbery. *Under the Revised Penal Law, such conduct would, at most, constitute assault and 'unauthorized use of a* vehicle' (§ 165.05)" (emphasis supplied). Turning to the facts, in our opinion, the trial court should not have submitted the felony murder count and the robbery count to the jury because there was legally insufficient evidence that either defendant or his codefendants intended to rob Tyrone of his sneakers. At most, they intended to cause him temporary loss of the sneakers in an attempt to humiliate and inconvenience him. There was no evidence that the defendant or his codefendants ever intended *permanently,* or *virtually permanently,* to "appropriate" the sneakers or "deprive" Tyrone of the use of his sneakers (see *People v Guzman,* 68 AD2d 58, 62; *People v Kenney,* 135 App Div 380). In fact, the only reasonable inference which can be drawn from the testimony of the People's witnesses was that Tyrone would be forced to walk home barefoot before retrieving his sneakers. Significantly, People's witness, Michael Young, testified on redirect examination, that the sneakers had been thrown into the middle lane of nearby Atlantic Avenue and that "I was going to bring back the guy's sneakers, but I left it as it was." There was nobody restraining Young or anybody else from retrieving the sneakers, and returning them to Tyrone a short while later. Therefore, viewing the evidence in a light most favorable to the People, the victim's sneakers, rather than being taken away from him in furtherance of robbery, were removed from him during the course of an assault, which is not one of the specified felonies in the definition of felony murder (see *People v Morris,* 39 AD2d 750; see, also, *People v Moran,* 246 NY 100; *People v Miller,* 39 AD2d 893, revd on other grounds 32 NY2d 157). As the court noted in *People v Miller* (*supra*): "[E]vidence adduced on the trial should 'not be warped or strained' to find another independent felony in order to sustain this conviction (Cf. *People* v. *Moran,* 246 N. Y. 100, 105). Such was not the intention of the legislature." In view of our holding here, we do not find it necessary to pass upon defendant's other contentions. Gibbons, J. P., Thompson, Niehoff and Rubin, JJ., concur.