■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL TORRES, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Feldman, J.), rendered May 28, 1985, convicting him of murder in the second degree, manslaughter in the first degree and attempted robbery in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The evidence established that on the evening of August 17, 1981, the defendant, Angel Gonzalez, Carlos Perez and a group of friends were "hanging out" outdoors when they observed an older man become verbally abusive to a young woman. At that time the defendant suggested that they get the old man for teasing the woman. A short while later when the group again saw the old man on the street one among the crowd said "Let's mug him!". The defendant was then heard to say "let's get him" and he then persuaded Angel Gonzalez to accompany him and two others as they pursued the man down the street. At the corner of Palmetto Street and Wyckoff Avenue, the defendant pulled out a "007" knife which Angel Gonzalez had seen him in possession of on prior occasions, and put the old man into a choke hold while holding the knife to his throat. The defendant and the two others dragged the old man into a parking lot, "checking him" along the way, while Angel Gonzalez kept a watch outside the parking lot for the police. When Angel Gonzalez's brother Jose, who had observed the incident from a nearby telephone booth, saw Angel standing guard by the parking lot entrance, he approached him to try and get him out of there. Someone was then heard to cry out "I stabbed him", and all the boys fled the scene. On the way back to their homes Jose Gonzalez heard the defendant say that he had "stuck" the man in his side, and the next day defendant told Angel not to say that he had stabbed the old

man. The man died as a result of single stab wound to his chest and abdomen which penetrated his diaphragm, liver and hepatic vein. The wound was consistent with one inflicted by a "007" knife.

The defendant argues that this evidence is legally insufficient to sustain his conviction. We disagree. Viewing the evidence in a light most favorable to the People, we find that it was legally sufficient to establish that defendant and his cohorts acted together with a shared intent to rob the victim *(see,* Penal Law §§ 20.00, 110.00, 160.15 [3]; §§ 160.00, 155.05 [1]), and that during the course of that attempted robbery, they caused his death (Penal Law § 125.25 [3]). Furthermore, the defendant's intent to cause serious physical injury (Penal Law § 125.20 [1]) can be readily inferred from his admissions and the nature of the victim's wound. Upon an exercise of our factual review power, we find that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

We also find that the defendant was not deprived of a fair trial by reason of prosecutorial misconduct. The prosecutor's reference in his opening statement to the anticipated testimony of one Carlos Perez, who later refused to testify, was not made in bad faith nor did it cause undue prejudice *(see, People v De Tore,* 34 NY2d 199, 207, *cert denied sub nom. Wedra v New York,* 419 US 1025). Similarly, reversible error did not occur when the prosecutor called Carlos Perez as a witness and he invoked his Fifth Amendment privilege against self-incrimination. The prosecutor called the witness in good faith, as was later evidenced by his granting the witness testimonial immunity, and he questioned Perez only briefly in the jury's presence. Though Carlos Perez was asked whether he had been convicted based on his participation in this crime, the prosecutor's inquiries in no way implied that Perez had implicated the defendant in this crime *(cf., People v Sifford,* 76 AD2d 937). Accordingly, this witness's refusal to testify did not add critical weight to the People's case *(see, People v Berg,* 59 NY2d 294; *People v Malphurs,* 111 AD2d 266, 270, *lv denied* 66 NY2d 616, 920). Furthermore, the importance as well as the effect of the curative instructions which were given to the jury cannot be underestimated *(see, People v Berg, supra).* While the prosecutor erred in asking the defendant whether he knew if Carlos Perez had made a statement to the police, this inquiry did not indicate that Carlos Perez had implicated the defendant, and the court's prompt careful curative instructions to the jury to disregard the comment and not to speculate in this regard ameliorated any possible preju-

dice. Furthermore, the prosecutor's summation wherein he discussed and commented on the motive and potential of the prosecution's witnesses to lie was, in light of the defense counsel's summation, entirely responsive and proper *(see, People v Oakley,* 114 AD2d 473, *lv denied* 66 NY2d 921; *People v Martin,* 112 AD2d 387, *lv denied* 66 NY2d 920). Mangano, J. P., Thompson, Lawrence and Weinstein, JJ., concur.

Brown, J., concurs in part and dissents in part and votes to modify the judgment by reversing the convictions for murder in the second degree, and attempted robbery in the first degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment, and as so modified, to affirm the judgment, with the following memorandum. The evidence adduced by the People in this case was, in my judgment, legally insufficient to sustain the defendant's conviction of attempted robbery in the first degree, the underlying predicate for the defendant's felony murder conviction. There was absolutely no evidence offered of an intent, shared or otherwise, on the defendant's part to attempt a larcenous taking, nor was there any evidence of an attempted larcenous taking *(see,* Penal Law §§ 110.00, 160.15 [3]; §§ 160.00, 155.05 [1]). This case is virtually identical to *People v Sanders* (38 AD2d 877), cited by the defendant in his *pro se* brief. In *Sanders,* the evidence showed that one of defendant's cohorts stated " 'Let's mug him' " and the defendant and others then chased the victim down the street. After the victim was knocked to the ground, the defendant kicked him. The Appellate Division, Fourth Department, reversed an attempted robbery conviction stating that there was no proof that the defendant had heard the statement about mugging the victim or that he asked for, received or attempted in any way to take property from him. Quite similarly in this case, there was no proof that the defendant was the one who said "Let's mug him" or that he had heard the statement; nor was there any proof of an attempt to commit larceny *(see, People v Reyes,* 110 AD2d 663; *People v Parker,* 96 AD2d 1063; *cf., People v Perez,* 121 AD2d 406, *lv denied* 68 NY2d 772).

Absent a sustainable underlying attempted robbery, the felony murder conviction upon which it was based must also fall *(see, People v Parker, supra; People v Sanders, supra).* The evidence was, however, legally sufficient to sustain the defendant's conviction for manslaughter in the first degree. In all other respects, I agree with my colleagues.