**Andrew FAGON, Petitioner,**

v.

**Raymond R. BARA, Jr., Superintendent, Arthur Kill Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.**

No. 86 Civ. 2685.

United States District Court,
E.D. New York.

June 30, 1989.

Andrew Fagon, pro se.

Kevin Lubin, Asst. Dist. Atty., New York City, for respondents.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Petitioner *pro se*, a parolee formerly in state custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] For reasons stated below, the petition is denied.

## FACTS

At approximately 2 a.m. on June 6, 1982, petitioner's codefendant, Lloyd Heron, and another man entered Bell's Social Club at

1. Petitioner is "in custody" for purposes of 28 U.S.C. § 2254. *See Maleng v. Cook,* —— U.S. ——, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).

638 East 169th Street in the Bronx and held up at gunpoint five patrons of the bar and the bar's owner. Two police officers arrived on the scene while the robbery was in progress and observed the two men leave the club and run to a nearby car. Already inside the car were the petitioner, who was in the driver's seat, and another man, who was sitting beside him. Heron jumped into the backseat of the car, which sped away immediately; the other man fled into a schoolyard.

The police gave chase, pursuing the car for about five minutes, until it crashed into a wall at the intersection of Morris and Teller Avenues. Petitioner jumped out of the driver's seat and Heron and the other man jumped out of the passenger's side of the car. A policeman found petitioner a short time later, crouching beneath the front porch of a nearby private house. After resisting arrest, petitioner was subdued and handcuffed. Heron was also arrested, and two firearms were found on his person. A subsequent search of the automobile turned up a bottle of Harvey's Bristol Creme which had been stolen from the bar.

At petitioner's jury trial before the State Supreme Court for Bronx County, one robbery victim, Virginia Allen, testified that petitioner was not one of the two men who entered the bar and robbed her, while another victim, Henry Lynden, testified that he did not recognize petitioner. Lynden also stated that he heard the voices of more than one robber, but only saw two of them. Frank Bell, the bar's owner, could not identify anyone.

Police Officer George Drumgoole testified that petitioner was not the other robber who ran out of the bar with Heron and fled into the schoolyard. Police Officer Ostris Maldonado testified that he did not see the face of the robber who ran into the schoolyard.

However, one of the bar's patrons, Mary Hargrove, identified petitioner as one of the two robbers, and testified that he had robbed her at gunpoint. She also stated that the bar was dimly-lit, that she had consumed a sixpack of beer over the three hours prior to the robbery, and that she

saw petitioner from distances of two to six feet, but only for three to four seconds at one point during the robbery and for about two seconds at another point.

Petitioner testified on his own behalf at trial, stating that he was a gypsy cab driver who had been forced into the role of getaway driver at gunpoint by the man sitting next to him in the front seat. He also contradicted the State's account of his arrest in numerous respects, claiming that he came out of hiding when he felt assured that no shootout would occur, and that he immediately told the police that he was only a gypsy cab driver who had been forced to drive the getaway car.

The judge's charge to the jury included an instruction on liability as an accessory to the crime, N.Y. Penal Law § 20.00, and instructions on the affirmative defense of duress, N.Y. Penal Law §§ 25.00(2) and 40.00(1). On February 16, 1984, the jury convicted petitioner of six counts of first degree robbery (one count per victim) pursuant to N.Y. Penal Law § 160.15 and six counts of second degree robbery pursuant to N.Y. Penal Law § 160.10.

Petitioner was sentenced to six concurrent terms of four to twelve years on the first degree robbery counts, and six concurrent terms of three to nine years on the second degree robbery counts.

The Appellate Division affirmed petitioner's conviction without opinion on March 13, 1986. *People v. Fagon*, 118 A.D.2d 1050, 499 N.Y.S.2d 1000 (1st Dep't 1986). The New York Court of Appeals denied leave to appeal on June 12, 1986. *People v. Fagon*, 68 N.Y.2d 667, 505 N.Y.S.2d 1033, 496 N.E.2d 691 (1986).

Petitioner filed his petition with this court on August 12, 1986, alleging that

(1) the prosecution failed to prove beyond a reasonable doubt that petitioner either participated in the robbery or intentionally helped the robbers escape;

(2) the court should have suppressed Ms. Hargrove's in-court identification;

(3) the statute embodying the affirmative defense of duress, N.Y. Penal Law §§ 25.00(2) and 40.00(1), unconstitutionally

shifted to the petitioner the burden of negating the element of intent; and

(4) the court erred in not granting a mistrial after the prosecutor made a remark, within the jury's hearing, implying that the prosecution's witnesses would be endangered if their addresses were revealed to the defense.

## DISCUSSION

### 1. Exhaustion

■ The State claims that petitioner has failed to exhaust state remedies with respect to the first and last of the claims enumerated above (insufficient evidence and prosecutorial misconduct), and that the entire petition therefore must be dismissed under the rule in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The court disagrees. "Obviously if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts." *Daye v. Attorney General,* 696 F.2d 186, 192 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Nunez v. Stevens,* No. 87 Civ. 4, 1987 WL 16976 (S.D.N.Y. Sept. 10, 1987) (1987 U.S. Dist. LEXIS 8118). Petitioner's Appellate Division brief cited "U.S. Const. Amend. XIV" in support of these two claims and thereby "fairly presented" their constitutional basis to the state court. Petitioner's State Appellate Brief at i, ii, 2, 22, 4.[2] Accordingly, the court finds that the claims were exhausted.

### 2. The Merits

#### A. *Insufficient Evidence*

Plaintiff asserts that the State failed to prove beyond a reasonable doubt that petitioner either participated in the robbery or intentionally helped the robbers escape. In assessing such a claim, a court should not

"ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1978) (emphasis in original) (citation omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original).

The Supreme Court has cautioned the federal courts that, under this standard, the jury retains almost the entire range of its traditional discretion as sole judge of the facts:

This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Id.,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original) (footnotes omitted).

■ Therefore, this court is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony. *United States v. Zabare,* 871 F.2d 282, 286 (2d Cir.1989) (on appellate challenge to sufficiency of evidence, "the reviewing court must draw all reasonable inferences and resolve all issues of credibility in favor of

---

**2.** Moreover, even if petitioner had not cited the Fourteenth Amendment to the United States Constitution, the court finds that the constitutional nature of petitioner's insufficient evidence claim was fairly presented to the state court by his "assertion of the claim in terms so particular as to call to mind a specific right

protected by the Constitution," *see Hawkins v. West,* 706 F.2d 437, 439 (2d Cir.1983), and that the constitutional nature of his prosecutorial misconduct claim was fairly presented to the state court by his "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye,* 696 F.2d at 194.

the verdict"); *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir.1981) (rejecting insufficient evidence claim because jury was entitled to believe State's witnesses despite inconsistencies in their testimony and State's evidence); *Soto v. Lefevre*, 651 F.Supp. 588, 592 (S.D.N.Y.1986) (federal habeas court has no power to redetermine comparative credibility of conflicting eyewitness testimony); *Milton v. Riley*, No. 88 CV 2848, 1988 WL 140663 (E.D.N.Y. Dec. 16, 1988) (1988 U.S. Dist. LEXIS 14842) (federal habeas court must adhere to credibility findings of state jury); *Bunting v. Kelly*, No. 87 Civ. 120, 1987 WL 10734 (S.D.N.Y. May 7, 1987) (1987 U.S. Dist. LEXIS 3593) (same); *Hinton v. Scully*, No. 85 Civ. 0162, 1985 WL 1431 (S.D.N.Y. May 30, 1985) (LEXIS, Genfed library, Dist file) (same).

Rather, the court must ask itself whether the jury could have rationally returned a verdict of guilty on all counts if it believed all the evidence tending to support that verdict. *See Tibbs v. Florida*, 457 U.S. 31, 45 n. 21, 102 S.Ct. 2211, 2220 n. 21, 72 L.Ed.2d 652 (1982) (if jury believed testimony of sole eyewitness, despite its weaknesses, due process standard of *Jackson v. Virginia* was satisfied).

In order to return the verdict of guilty on all counts, the jury must have believed either or both of two scenarios: (1) that petitioner participated in the robbery inside the bar; or (2) that petitioner drove the getaway car, and did so of his own volition, with the intention of assisting the robbers.

As previously discussed, at trial, petitioner did not dispute that he drove the getaway car and that he jumped out of the driver's seat at or just before the time the car crashed.

To rationally conclude that petitioner participated in the robbery inside the bar, the jury would have had to believe Ms. Hargrove's testimony identifying petitioner as the man who robbed her, and it would have had to disbelieve petitioner's testimony that he did not participate in the rob-

bery but merely drove the getaway car. In addition, the jury would have had to take one of two paths through the evidentiary thicket:

A) The jury could have inferred from the evidence that petitioner robbed Ms. Hargrove, fled from the bar with Heron, and got into the driver's seat of the car. This would have required the jury to disbelieve: (1) the testimony of Allen and Officer Maldonado that petitioner was not one of the two robbers; (2) the testimony of Officers Drumgoole and Maldonado that the other robber did not make it to the car in time and fled into the schoolyard; and (3) the testimony of Officer Drumgoole that the front seat of the car was already occupied by two people and that they only saw Heron enter the back seat.

B) The jury could have decided that it believed Lynden's testimony that he heard (but did not see) more than two robbers. If the jury credited Lynden's testimony, it could have inferred from the evidence that at least three robbers fled the bar, and that one of them failed to make it to the car and ran into the schoolyard instead, while Heron and the petitioner both made it to the car, where petitioner took the wheel. In that case, the jury would have had to disbelieve (1) the testimony of Allen,[3] Bell and Lawrence Foye (another victim) that there were only two robbers; (2) the testimony of Officers Drumgoole and Maldonado that only two robbers fled the bar; and (3) the testimony of Officer Drumgoole that the front seat of the car was already occupied by two people and that they only saw Heron enter the back seat.

While the inferences and credibility judgments described above suggest a reasoning process bordering on the irrational, a conviction based upon such inferences and credibility judgments probably would be constitutional under the *Jackson v. Virginia* standard. *Cf. Hawkins v. LeFevre*, 758 F.2d 866, 968–69, 871 n. 7 (2d Cir.1985) (conviction reversible under *Jackson* standard where the only inculpatory testimony

---

**3.** At one point in her testimony, Allen did state that at the conclusion of the robbery, she saw "four guys run out." Tr. 902. This statement appears to be inconsistent with other testimony by her.

was that of a witness who could not possibly have seen the crime from where he stood). *See also Tibbs,* 457 U.S. at 37–38, 102 S.Ct. at 2215–16 (distinguishing appellate reversals based on insufficient evidence from those based on the "weight" of the evidence).

■ However, the court need not decide this because the verdict almost certainly did not rest upon a jury determination that petitioner participated in the robbery. Rather, the jury almost certainly decided that petitioner was liable as an accessory to the crime because he voluntarily drove the getaway car.[4] The jury could have reached this determination simply by exercising its traditional "responsibility ... fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. *See Mallette v. Scully,* 752 F.2d 26 (2d Cir.1984) (circumstantial evidence was sufficient, under *Jackson* standard, to sustain manslaughter verdict against petitioner who claimed he had been forced to drive getaway car).

Thus, the verdict did not offend due process, and petitioner's first ground for habeas relief must be denied, with prejudice.

### B. *In–Court Identification*

Petitioner claims that a suggestive identification procedure, the results of which were suppressed by the state court, tainted Hargrove's in-court identification of him, and that Hargrove's in-court identification therefore should have been suppressed.

As previously discussed, Hargrove's testimony only became relevant if the jury convicted petitioner on the theory that he participated in the robbery inside the bar, a theory which would have required it to disbelieve large portions of the testimony of other witnesses, including the testifying police officers.

■ Alternatively, the jury could have reached the same verdict by *rejecting* Hargrove's testimony and concluding, based upon reasonable inferences from the testimony of other witnesses, that petitioner drove the getaway car voluntarily and with the intention of assisting the robbers. The court has already determined that the jury almost certainly took the latter course. Consequently, any error in admitting Hargrove's testimony could not have "contributed to the verdict obtained" and therefore was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Meadows v. Kuhlmann,* 812 F.2d 72, 76 (2d Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987) (applying harmless error rule to erroneous admission of identification testimony).

Accordingly, petitioner's second ground for habeas relief is denied, with prejudice.

### C. *Improper Shifting of Burden of Proof*

■ Petitioner claims that N.Y. Penal Law §§ 25.00(2)[5] and 40.00(1),[6] by placing

---

**4.** The jury was instructed that, as to each count of first degree robbery, the jury must find beyond a reasonable doubt that

    (1) on June 6, 1982 in Bronx County, petitioner took or aided another person in taking property from the victim;

    (2) that the victim owned the property taken from him or her;

    (3) that the property was taken forcibly;

    (4) that during the course of the robbery, the victim was shown what appeared to be a pistol; and

    (5) that petitioner intended to steal the victim's property or to assist others in doing so.

    These elements were repeated as to each count of second degree robbery, except for the fourth element, which was that the robbery was committed by two or more people actually inside the club.

Petitioner does not assert that these instructions mistated the applicable law.

**5.** Section 25.00(2) states:

When a defense declared by statute to be an *"affirmative defense"* is raised at trial, the defendant has the burden of establishing such defense by a preponderance of the evidence. *Id.* (emphasis added).

**6.** Section 40.00(1) states:

In any prosecution for an offense, it is an *affirmative defense* that the defendant engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist.

upon him the burden of proving the affirmative defense of "duress" by a preponderance of the evidence, unconstitutionally shifted the burden of proof on the element of intent, which the Government must prove beyond a reasonable doubt in order to obtain a conviction.[7]

The Second Circuit rejected this precise argument in *dicta* in *Rodriguez v. Scully*, 788 F.2d 62, 64–65 (2d Cir.1986) (holding that claim was not preserved for review), and the New York Court of Appeals also rejected it in *People v. Bastidas*, 67 N.Y.2d 1006, 503 N.Y.S.2d 315, 494 N.E.2d 446 (1986). However, since neither of these opinions constitute authority binding upon this court, analysis of the case law is appropriate.

Petitioner relies upon *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Mullaney*, the respondent was convicted of murder under a Maine statute providing that, where the State proved the elements of manslaughter beyond a reasonable doubt, defendant was presumed to have acted with "malice aforethought," thus rendering him liable for the crime of "murder" and subjecting him to a mandatory life sentence. However, the defendant could rebut the presumption of "malice aforethought," thus reducing the conviction to manslaughter, if he established by a preponderance of the evidence that he acted in the heat of passion on sudden provocation.

By the time the case reached the Supreme Court, the Maine Supreme Judicial Court had interpreted the statute as creating two species of a single offense, known as "felonious homicide," and that "malice aforethought" "connot[ed] no substantive fact" but was solely a "policy presumption" that one who intentionally killed another without justification or excuse must receive a life sentence unless he could prove he acted in the heat of passion on sudden provocation. *Id.*, 421 U.S. at 688–89 & n. 9, 95 S.Ct. at 1884–85 & n. 9.

Petitioner in *Mullaney* argued that this statutory scheme violated the rule of *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), which held that the Constitution requires the State to prove "beyond a reasonable doubt … every fact necessary to constitute the crime with which [defendant] is charged."

The State argued that, because "malice aforethought" "connot[ed] no substantive fact" but was solely a "policy presumption" bearing on the degree of punishment, it was not a "fact necessary to constitute the crime" and did not come within *Winship*'s ambit.

Holding for petitioner, the Court rejected the State's arguments as representing a

---

*Id.* (emphasis added).

**7.** The federal Constitution requires the State to "prove beyond a reasonable doubt … every fact necessary to constitute the crime with which [defendant] is charged." *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Petitioner's conviction was predicated on at least two statutory offenses, first and second degree robbery, each of which includes intent as an element—*i.e.*, as a "fact necessary to constitute the crime[.]" *See People v. Parker*, 96 A.D.2d 1063, 466 N.Y.S.2d 700 (2d Dep't 1983). N.Y. Penal Law § 160.00 defines "robbery" as "forcible stealing" in the course of committing a "larceny." N.Y. Penal Law § 155.05 states, in turn, that "larceny" occurs when, *"with the intent to deprive another of property or to appropriate the same to himself or to a third person,* [a person] wrongfully takes, obtains or withholds such property from an owner thereof." *Id.* (emphasis added). *See also People v. Morales*, 130 A.D.2d 366, 367, 515 N.Y.S.2d 27, 28 (1st Dep't 1987) (first degree robbery conviction requires proof beyond reasonable doubt that defendant acted with specific intent to steal property); *People v. Slack*, 131 A.D.2d 610, 516 N.Y. S.2d 309 (2d Dep't 1987) (reversing second degree robbery conviction due to State's failure to establish that defendant intended to permanently deprive complainant of his property).

As previously stated, the jury almost certainly convicted petitioner as an accessory to the crimes of first and second degree robbery. The state statute governing accessorial liability incorporates the intent element of the robbery statutes:

> When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, *acting with the mental culpability required for the commission thereof,* he solicits, requests, commands, importunes, or *intentionally aids* such person to engage in such conduct.

N.Y. Penal Law § 20.00 (emphasis added).

sort of "formalism" which would permit state legislatures to evade *Winship*'s mandate by redefining the elements of substantive crimes as presumptions bearing only upon punishment. *Id.*, 421 U.S. at 698–700, 95 S.Ct. at 1889–90.

"Formalism" was reincarnated as federalism in *Patterson v. New York.* There, the Supreme Court upheld the constitutionality of a conviction under New York's second-degree murder statute, which contained two elements: (1) intent to cause the death of another person, and (2) causing the death of such person or a third person. N.Y. Penal Law § 125.25. Appellant claimed that, under *Mullaney*, it was unconstitutional for New York to place on him the burden of proving the affirmative defense that he had "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." *Id.*, 432 U.S. at 198, 97 S.Ct. at 2321.

The Court disagreed, holding that a State need not, as a "constitutional imperative," "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." *Id.*, 432 U.S. at 210, 97 S.Ct. at 2327. Noting that "preventing and dealing with crime is much more the business of the States than it is of the Federal Government," *id.*, 432 U.S. at 201, 97 S.Ct. at 2322, the Court in *Patterson* found that the Constitution permits States far greater leeway to define substantive crimes and allocate the burden of proof than a reading of *Winship* or *Mullaney* might have suggested. The Court reasoned that, where a state legislature has the constitutional prerogative to criminalize an activity, yet decides to recognize a defense to that crime, the State may allocate the burden of proof

so as to assure itself that the defense has been established with reasonable certainty. "To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." *Id.*, 432 U.S. at 209, 97 S.Ct. at 2326 (footnote omitted).

The Court also expressed concern that constitutionalizing the burden of proof for all defenses, thus adding to the States' prosecutorial burden, would provoke legislative resistance to law reform efforts aimed at increasing the number and kind of affirmative defenses.

In distinguishing *Mullaney* from the case before it, the Court restated *Mullaney*'s holding as follows: *"Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that *it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."* *Id.*, 432 U.S. at 215, 97 S.Ct. at 2329 (emphasis added).[8] In contrast, the Court noted that the New York statute contained *no such* presumption:

> The crime of murder is defined by the [New York] statute … as causing the death of another person with intent to do so. The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. *No further acts are either presumed or inferred in order to constitute the crime.*
>
> *Id.*, 432 U.S. at 205–06, 97 S.Ct. at 2324 (emphasis added).

Thus, *Patterson* limited *Mullaney* to the precise situation in which a state criminal

---

8. Subsequent Supreme Court cases have reversed convictions based upon jury charges which shifted the burden of proof to the defendant by incorporating a presumption. *See Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (rebuttable presumptions that acts of person of sound mind and discretion are presumed to be product of his will, and that person of sound mind and discretion intends the natural and probable consequences of his acts); *Sandstrom v. Montana,* 442 U.S. 510,

99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts"). However, where reversal was urged on the ground that an affirmative defense shifted the burden of proof to the defendant, the Court, following *Patterson,* upheld the conviction. *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (self-defense). *See* discussion, *infra.*

statute permits one element of a crime to be presumed upon proof of the other elements.[9] *Patterson* signals a return to "formalism" because it holds, in effect, that a crime's statutory definition is usually dispositive in determining which facts must be proved by the State beyond a reasonable doubt, rather than by the defendant as an affirmative defense. *See McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986) (*"Patterson* stressed that in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive"); *United States v. Calfon*, 607 F.2d 29, 30 (2d Cir.1979), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980) ("The controlling factor appears to be what the *legislature* chose to include as elements of an offense") (emphasis in original).

Here, in contrast with *Mullaney*, the trial court's instructions permitted no elements to be presumed. Rather, as in *Patterson*, the trial court clearly placed upon the State the burden of proving all elements of the crimes of committing and assisting first and second degree robbery. Thus, there was no constitutional violation. *See United States v. Calfon, supra* (not constitutional error to place burden of proving affirmative defense of duress upon defendant charged with distributing and causing the distribution of cocaine); *accord United States v. Mitchell*, 725 F.2d 832, 834–35 (2d Cir.1983). *See also Simopoulos v. Virginia*, 462 U.S. 506, 510, 103 S.Ct. 2532, 2535–36, 76 L.Ed.2d 755 (1983) (placing upon defendant the burden of going forward with evidence on an affirmative defense is normally permissible).

Petitioner takes a very different view of the case law. Petitioner asserts that the controlling factor in determining whether or not the defendant can be required to prove a defense is whether that defense "serve[s] to negative any facts of the crime which the State is to prove" to convict the defendant of the crime charged. *Patterson*, 432 U.S. at 207, 97 S.Ct. at 2325. In his view, *Patterson*'s holding turned on the Court's observation that a defendant could prove the affirmative defense of extreme emotional disturbance without having to *disprove* any of the facts constituting the crime of second degree murder:

> This affirmative defense ... does not serve to negative any facts of the crime which the State is to prove in order to convict of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion[.]

*Id.*, 432 U.S. at 206–07, 97 S.Ct. at 2325.

Petitioner claims that this case is like *Mullaney* and unlike *Patterson* because proving the affirmative defense of duress necessarily entailed *disproving* the intent element of the crime of robbery. Accordingly, petitioner argues that his conviction is unconstitutional under *Mullaney*.

The court finds petitioner's argument unpersuasive. First, the Supreme Court could not have rested its holding in *Mullaney* on the ground that the defense of having "acted in the heat of passion on sudden provocation" tended to negate any facts constituting the crime of murder, since, as previously discussed, Maine's highest court had held that "malice aforethought" was solely a policy presumption "connot[ing] no substantive fact." *See* discussion, *supra*. Petitioner's argument also

---

9. *Patterson* contains *dicta* recognizing that *In re Winship* might preclude some extreme examples of burden-shifting through the use of affirmative defenses:

> [The holding in *Patterson*] may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the States may not go in this regard. "[I]t is not within the province of a legislature to declare

an individual guilty or presumptively guilty of a crime." *McFarland v. American Sugar Rfg. Co.*, 241 U.S. 79, 86 [36 S.Ct. 498, 501, 60 L.Ed. 899] (1916). The legislature cannot "validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt." *Tot v. United States*, 319 U.S. 463, 469, 63 S.Ct. 1241, 1246, 87 L.Ed. 1519 (1943).

*Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327.

is inconsistent with *Patterson*'s explanation that *Mullaney* merely forbids unconstitutional presumptions, and is contrary to *Patterson*'s central lesson that state legislatures should be left free to craft affirmative defenses with minimal constitutional supervision.

Moreover, petitioner's understanding of *Patterson* was decisively rejected in *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). There, petitioner had been convicted under an Ohio statute of "aggravated murder," defined as "purposely, and with prior calculation and design, caus[ing] the death of another." *Id.*, 480 U.S. at 230, 107 S.Ct. at 1100. In rejecting petitioner's claim that it was unconstitutional for her to bear the burden of proving that she acted in self-defense, the Court was "not moved" by the apparent similarity between the facts necessary to prove self-defense and those necessary to negate the elements of aggravated murder:

> We are … not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any element of the State's case. When the prosecution has made out a *prima facie* case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt. Evidence creating a reasonable doubt could easily fall short of proving self-defense by a preponderance of the evidence. Of course, if such doubt is not raised in the jury's mind and each juror is convinced that the defendant purposely and with prior calculation and design took life, the killing will still be excused if the elements of the defense are satisfactorily established. We note here, but

need not rely on it, the observation of the Supreme Court of Ohio that "[a]ppellant did not dispute the existence of [the elements of aggravated murder], but rather sought to justify her actions on grounds she acted in self-defense".

*Id.*, 480 U.S. at 234, 107 S.Ct. at 1102.

With this language, the Court rejected the reasoning of Justice Powell's dissent, *id.*, 480 U.S. at 236–42, 107 S.Ct. at 1103–07, which argued that the State must carry the burden of proving a defense that negates an element of the crime.

However, the Court noted that *Winship* would have mandated reversal had the court instructed the jury to disregard evidence submitted by the defendant in support of her affirmative defense when considering whether the State had proven guilt beyond a reasonable doubt:

> It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was reasonable doubt about the State's case, *i.e.*, that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance of the evidence standard. Such an instruction would relieve the State of its burden and plainly run afoul of *Winship*'s mandate.

*Id.*, 480 U.S. at 233–34, 107 S.Ct. at 1102.

No such clearly unconstitutional instruction was given in this case. In fact, the trial court instructed the jury that "[i]n considering whether the People have sustained their burden of guilt against [the] defendant, … you may consider not only the evidence introduced on the People's case but all of the evidence adduced during the trial taken as a whole and regardless of who produced it." Tr. 1173.

Accordingly, petitioner's third ground for habeas relief is denied, with prejudice.

### D. *Prosecutorial Misconduct*

Petitioner claims he was denied a fair trial when the prosecutor, in a sidebar conference, stated in a "stage whisper" clearly audible to the jury that he did not want the original of a police report marked in evidence because it had "the names and ad-

dresses [of the witnesses] and we want to protect the witnesses."

After the statement was made, petitioner's counsel moved for a mistrial in a sidebar conference outside the hearing of the jury:

MR. BERMAN: Your Honor, I have one objection which I would like to be heard on very briefly. The Assistant said loudly so the jurors could hear him, "We don't want the original marked because we have the names and addresses and we want to protect the witnesses." That should never have been said before the jury. That was said with full force and effect to try to tell them there may be some fear involving the defendants if defendants' counsel were able to obtain their addresses. This should not be said before the jury. I am moving for a mistrial.

Secondly, should the Court not grant it, I want and request instruction to the Assistant that no remarks of that type be made in the future, especially where the Assistant isn't going to be able to produce most of the witnesses on that complaint report. Some of them may think they are not here because there is a threat.

MR. MURASKIN: I would join in that.

THE COURT: Mr. Nelson, it's most inadvisable to state that in front of a jury and I will give a curative instruction if that's what you want.

MR. BERMAN: How about my motion for a mistrial?

THE COURT: Denied because I plan to give them a curative instruction. I am going to give a curative instruction because this really should never have been said by anybody, and I am sure all three of you are professionals and know you should not do that.

\* \* \* \* \* \*

Now I assume you want a curative instruction.

MR. BERMAN: I don't think it can be—

THE COURT: I would propose to simply say that asides by lawyers on either side are absolutely irrelevant and should be disregarded without alluding to things

specifically. Would you like me to do that?

MR. BERMAN: I would like you to do that, your Honor. I would also—

THE COURT: As opposed to calling their attention to what the remark was, I presume.

MR. BERMAN: Yes.

Tr. 317–23.

Immediately thereafter, the trial court gave the jury the following curative instruction:

THE COURT: Ladies and gentlemen, before we resume with Mr. Muraskin's cross-examination, I want to caution you that asides or remarks that lawyers make in the course of the trial are to be totally disregarded by you since in the heat of the fray things are said, but you must completely disregard them because they have no bearing whatsoever on this case.

*Id.*, 323–24.

In its jury charge, the trial court also instructed the jury to base its verdict upon the evidence and not upon extraneous matters, and that the evidence consisted of witness's testimony, exhibits and stipulated facts. Tr. 1165–68.

■ The State asserts that this claim is procedurally barred due to defense counsel's failure to object to the court's curative instruction. This argument is utterly specious. After the prosecution made the allegedly improper remark, defense counsel moved for a mistrial. The judge denied the motion and shortly thereafter asked defense counsel whether he would like a curative instruction. Defense counsel replied that he would. Under New York law, defense counsel was *required* to request a curative instruction in order to preserve his objection to the prosecutor's statement. *People v. Ayala*, 120 A.D.2d 600, 601, 502 N.Y.S.2d 75, 76 (2d Dep't), *app. den.*, 68 N.Y.2d 755, 506 N.Y.S.2d 1042, 497 N.E.2d 712 (1986); *People v. Medina*, 53 N.Y.2d 951, 953, 441 N.Y.S.2d 442, 443, 424 N.E.2d 276, 277 (1981). Moreover, the Appellate Division, as the last state court to review the conviction, affirmed without opinion and therefore did not expressly rely on any state law procedural bar for its determina-

tion. Accordingly, federal habeas review is not precluded. *Harris v. Reed,* — U.S. ——, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1988).

To obtain habeas relief on the basis of prosecutorial misconduct at trial, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citation omitted). Rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id.* (citation omitted).

While clearly objectionable, the prosecutor's comment did not "manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id.,* 477 U.S. at 182, 106 S.Ct. at 2472.

■ Of particular importance here is the fact that "the trial judge ..., who observed the prosecutor's remarks as well as the whole of the trial, ... agreed that those remarks were improper, ... believed that the unfairness was correctable through an instruction, and ... in fact [gave] the jury a strong curative instruction." *Caldwell v. Mississippi,* 472 U.S. 320, 339, 105 S.Ct. 2633, 2645, 86 L.Ed.2d 231 (1985) (describing and distinguishing the holding denying habeas relief in *Donnelly v. De Christoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *Tarpley v. Dugger,* 841 F.2d 359, 364 (11th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 101, 102 L.Ed.2d 76 (1988) (curative instruction may remedy effects of improper comments by prosecutor).[10]

■ In view of these facts, the court finds that the prosecutor's remark, while improper, was "not of constitutional magnitude." *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986) (upholding conviction where prosecutor cross-examined alibi witnesses without laying proper foundation, sought to discredit alibi witnesses in summation by pointing out that they had not come forward before with their testimony, and referred to defendant's mother as "Momma" and suggested that any mother would lie for her son); *Hopkinson v. Shillinger,* 866 F.2d 1185, 1205–11 (10th Cir. 1989) (improper prosecutorial argument capitalizing on presence of security personnel did not warrant habeas relief); *Sales v. Harris,* 675 F.2d 532, 541–42 (2d Cir.), *cert. denied,* 459 U.S. 876, 103 S.Ct. 170, 74 L.Ed.2d 140 (1982) (same where prosecutor argued that victim's identification testimony was credible).

### CONCLUSION

The petition is denied in its entirety, with prejudice.

SO ORDERED.

---

**10.** Juries are presumed to follow a court's curative instructions. *United States v. Napue,* 834 F.2d 1311, 1325 (7th Cir.1987); *United States v. Davis,* 831 F.2d 63, 65 (5th Cir.1987); *United States v. Nolan,* 700 F.2d 479, 485 (9th Cir.), *cert.*

*denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *Snow v. Reid,* 619 F.Supp. 579, 584 (S.D.N.Y.1985); *Travison v. Jones,* 522 F.Supp. 666, 670 (N.D.N.Y.1981).