THIRD DEPARTMENT, JUNE, 2012

(June 7, 2012)

 THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOBBY JOE HATCHCOCK, Appellant. [945 NYS2d 796]—

Lahtinen, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered September 2, 2009, upon a verdict convicting defendant of the crime of murder in the second degree.

On June 5, 1997, police received a report of a dead female in a vegetated area behind a Department of Public Works building in the City of Binghamton, Broome County. An autopsy revealed that the victim had died from loss of blood as a result of a wound in her neck caused by a sharp instrument. Although the time of death could not be precisely determined, the victim was last seen alive at about 10:00 P.M. on June 3, 1997, and a teenager first saw her dead body (but did not report it) at around 4:00 P.M. on June 4, 1997.

Several years later, police were able to match the DNA from a condom found in the victim's vagina during the autopsy to defendant. The victim, a drug addict who exchanged sex for drugs or money, also had DNA from other individuals on her body. After the DNA match, defendant was questioned by police in August 2001 and March 2002, giving inconsistent and potentially inculpatory statements. The investigation continued for several years and eventually, in March 2008, defendant was indicted on one count of second degree murder for the death of the victim. Following a jury trial, he was convicted of the charged crime and thereafter sentenced to a prison term of 25 years to life. Defendant appeals.

Defendant argues that the verdict was not supported by legally sufficient evidence and that it was against the weight of the evidence. In legal sufficiency review, we view the evidence in the light most favorable to the People and " 'determine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt' " (*People v Acosta*, 80 NY2d 665, 672 [1993], quoting *People v Steinberg*, 79 NY2d 673, 682 [1992]). The physician who performed the autopsy testified that the victim had multiple injuries inflicted shortly before her death, and he opined that she died of a stab wound to the neck with resulting blood loss. A condom found in her body during the autopsy contained DNA that was eventually linked to defendant. Upon questioning by two police officers, defendant initially denied involvement with the victim. After being informed of the DNA evidence, he changed his story and admitted having sex with her behind the Department of Public Works building, but stated that it had occurred a few days before the time when he learned about her death. He further recalled that

he had smoked crack with the victim that evening and he acknowledged that "things got a little wild." He also reportedly stated to the police that he did "violent and crazy things" when high. He admitted to police that he normally carried a small knife. Significantly, when directly asked whether he killed the victim, defendant responded several times during the course of the interview that he "could have" because he was high, but later he told them that he was not the killer. Defendant made statements to relatives and close friends—both shortly after the incident and many years later—reflecting his possible involvement, including stating in the days after the crime that he knew who committed it and asking his girlfriend (as well as others) years later whether a person who killed someone could be forgiven.

As for the element of intent, it can be inferred from defendant's conduct and the surrounding circumstances (*see People v Bracey*, 41 NY2d 296, 301 [1977]; *People v Scott*, 47 AD3d 1016, 1019 [2008], *lv denied* 10 NY3d 870 [2008]). Sufficient proof on this element was provided by the nature and extent of the victim's injuries, the evidence regarding the manner in which the victim was killed and defendant's comments regarding his potential wild and violent conduct (*see People v Tedesco*, 30 AD3d 1075, 1076 [2006], *lv denied* 7 NY3d 818 [2006]; *People v Tompkins*, 8 AD3d 901, 903 [2004]; *People v Torres*, 141 AD2d 682, 683 [1988]). The verdict is supported by legally sufficient evidence.

Turning to the weight of the evidence, a different verdict would not have been unreasonable. Thus, we view the evidence in a neutral light, weigh conflicting testimony and evaluate any reasonable inferences from the evidence in considering whether the jury justifiably found defendant guilty beyond a reasonable doubt (*see People v Romero*, 7 NY3d 633, 643-644 [2006]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). The precise time of death was not established and there was evidence that other individuals—including one who admitted to supplying the victim with crack in exchange for sex on June 3, 1997—had access to her during the time frame in which she died. Defendant offered evidence through the leader of a prison Bible study group explaining that his comment about being forgiven pertained to the drug death of his brother and the fact that he had introduced him to drugs. An expert testifying for the defense stated that bite marks on the victim, when compared to dental molds of various individuals, indicated that one of the other individuals could have inflicted the wounds. There was conflicting proof and difficult credibility issues. According due deference to the

credibility determinations made by the jury (*see People v Bleakley*, 69 NY2d at 495; *People v Thompson*, 92 AD3d 1139, 1141 [2012]) and upon weighing the evidence in the record, we are unpersuaded that the verdict was against the weight of the evidence.

County Court's questioning of the physician who performed the autopsy did not deprive defendant of a fair trial. The issue was not preserved by an objection (*see People v Charleston*, 56 NY2d 886, 887-888 [1982]). In any event, reversible error did not occur since the questioning was quite brief, conducted after both parties had completed their examination of the doctor, attempted to clarify an issue regarding where the victim had died, and was based on evidence already in the record (*see People v Arnold*, 98 NY2d 63, 67-68 [2002]; *People v McCrone*, 12 AD3d 848, 851 [2004], *lv denied* 4 NY3d 800 [2005]).

Defendant further argues that he was deprived of a fair trial by the prosecutor's comment in summation that defendant "lost [the] presumption of innocence [when] he killed [the victim]." This was clearly an improper comment. However, no objection was made so as to preserve the issue (*see People v Burnell*, 89 AD3d 1118, 1122 [2011], *lv denied* 18 NY3d 922 [2012]; *People v Westervelt*, 47 AD3d 969, 974 [2008], *lv denied* 10 NY3d 818 [2008]). Moreover, when considered in the context of the entire trial, the isolated comment would not warrant reversal since County Court thereafter charged the jury that defendant is presumed innocent throughout the proceedings and defendant points to no improper comments other than this single statement (*see People v Hendrie*, 24 AD3d 871, 873 [2005], *lv denied* 6 NY3d 776 [2006]).

Finally, we find unavailing defendant's contention that his sentence was harsh and excessive. Although defendant received the maximum sentence and he had been offered a sentence of 10 to 20 years in a plea he rejected, defendant had a lengthy criminal record spanning several decades. County Court did not abuse its discretion nor are there extraordinary circumstances warranting a modification of defendant's sentence (*see People v Sanchez*, 75 AD3d 911, 914-915 [2010], *lv denied* 15 NY3d 895 [2010]; *People v Robinson*, 72 AD3d 1277, 1278 [2010], *lv denied* 15 NY3d 809 [2010]).

Peters, P.J., Mercure, Rose and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.