Manuel VERA, Petitioner,

v.

Robert HANSLMAIER, Superintendent, Woodbourne Correctional Facility, Respondent.

No. 95 Civ. 5288(BSJ).

United States District Court, S.D. New York.

April 29, 1996.

Manuel Vera, Woodbourne, NY, pro se.

Steven A. Yomtov, Assistant District Attorney, Bronx County, Bronx, NY, for defendant.

## Opinion and Order

JONES, District Judge:

Manuel Vera, *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Challenging his state conviction for manslaughter in the first degree, petitioner argues that he was denied due process by what he claims were 1) the People's failure to disprove his justification defense beyond a reasonable doubt, 2) the trial court's unbalanced interested witness charge, and 3) the prosecutor's improper summation remarks.  This Court referred the petition to United States Magistrate Judge Peck for a Report and Recommendation.  After reviewing the Report and Recommendation Magistrate Judge Peck issued, this Court holds that the petition must be denied.

Viewing all of the evidence, and drawing all reasonable inferences in favor of the prosecution, Magistrate Judge Peck found that a rational fact finder could have believed the People's witnesses and could have found that petitioner had the required intent to commit first degree manslaughter and was guilty beyond a reasonable doubt.  Accordingly, he found that petitioner did not meet the burden

---

1.  In relevant part, the statute provides
   a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court ... on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
   28 U.S.C. § 2254.

necessary to prevail on an insufficiency claim made on appeal. With regard to petitioner's remaining claims, Magistrate Judge Peck found that the Appellate Division's affirmance of the conviction rested on independent and adequate state grounds, that is, petitioner's failure to object at trial, thereby barring federal court review. Consequently, Magistrate Judge Peck recommended that the petition be denied.

A district court will uphold a magistrate's Report and Recommendation unless it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1). However, if a party files an objection to a magistrate's Report and Recommendation, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Since petitioner filed no objection, this Court has reviewed Magistrate Judge Peck's findings to determine if they are clearly erroneous or contrary to law, and finds that they are not.

### CONCLUSION

This Court adopts in its entirety Magistrate Judge Peck's Report and Recommendation, which is appended hereto. Accordingly, the petition is denied, and no writ shall issue.

SO ORDERED

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

A jury in the New York Supreme Court, Bronx County, convicted petitioner Manuel Vera on November 7, 1990, of manslaughter in the first degree. *See People v. Vera,* 182 A.D.2d 574, 585 N.Y.S.2d 700 (1st Dep't 1992). As a second felony offender, Vera was sentenced to nine to eighteen years imprisonment. *Id.* Vera's habeas corpus petition alleges that (1) the state failed to disprove, beyond a reasonable doubt, his justification defense, and (2) he was denied due process by the trial court's unbalanced interested witness charge and the prosecutor's expression of his personal belief in Vera's guilt. For the reasons set forth below, I recommend that the Court deny Vera's petition. As to petitioner Vera's

first ground, there was sufficient evidence for the jury to have convicted him. As to the second ground, the Court is barred from reaching it because the Appellate Division denied Vera's appeal for an adequate and independent state ground, that is, his failure to object at trial.

### FACTS

**Trial Testimony**

On September 23, 1990, between 8:30 and 9:00 P.M., an altercation arose between petitioner Vera and the deceased, Edward Jay ("Jay"), also known as "Shane," "Blackie," or "Blood." (Trial Transcript [hereafter, "T"] at 19–21, 37–38, 51, 95–96.)

The People's first witness, Robin Singleton, testified that she and a couple of other people were standing on the corner of Walton Avenue and 165th Street in the Bronx when Jay touched Vera. (T. 19–21, 32, 40–41.) A fight broke out, but was stopped. (T. 21, 40–43.) Singleton testified that Vera twice screamed, "Yo, Bubba man, that mother f---er don't know me, don't touch me, I kill that mother f---er." (T. 32–33.) Some people walked Jay down the hill, left him there, and returned to the corner. (T. 21, 33, 44, 46.) Vera followed Jay down the hill and another fight began; during this fight, Vera pulled a knife and stabbed Jay. (T. 21, 45–48.) After Vera stabbed Jay, the people who had been standing on the corner attacked Vera and beat him up, including hitting him with bottles. (T. 21, 45, 50.) On cross-examination, defense counsel brought out contradictions between Singleton's trial and grand jury testimony, and emphasized that Singleton sold drugs and was the victim's friend. (T. 35–40, 47–49, 52–53.)

The People's next witness, Willis Bing, testified to essentially the same events. Bing testified that Jay accidentally bumped Vera, words were spoken, although Bing did not remember what was said, and the first fight started. (T. 57–61, 81–82, 85.) Bing and others broke up this fight, and told Jay to walk down the hill. (T. 59, 61, 85–86.) Bing returned to the corner and a few minutes later someone said that Jay had been stabbed; Bing looked down the block and

saw Vera stab Jay a second time. (T. 59–60, 86–87.) At no time did Jay have a weapon in his hand. (T. 62–63.) Bing left when the police arrived because he was carrying PCP (angel dust) for sale. (T. 90.) On cross-examination, defense counsel established that Bing sold drugs and was Jay's friend. (T. 69–78, 81.)

The People's third, and last, eyewitness to the stabbing was John Duran. His version of the events differed from Singleton's and Bing's. Duran was in a grocery store with some friends when someone said Jay was in an argument. (T. 95, 100–01, 115.) Duran then went outside, and saw one of his friends holding Jay. (T. 95–96, 101, 115.) Someone told Vera to leave the area. (T. 96, 115, 117.) Vera was angry and resounded that nobody owns the block. (T. 117.) According to Duran's testimony, Vera, not Jay, walked down the hill first, and Jay walked down the hill after Vera. (T. 96–97, 120, 132.) While going down the hill, Jay was saying "no problem," indicating that there was not a problem between him and Vera. (T. 97, 101.) When Jay reached out to touch Vera on the shoulder, Vera pulled out a knife and swung at Jay, missing him. (T. 97–98, 101, 127–28, 130.) Jay stumbled back, and Vera stabbed him twice in the chest. (T. 98, 101–02, 121, 130–31.) After Vera stabbed Jay, the people who had been standing on the corner beat Vera up using beer bottles. (T. 98, 133, 140–41.) Duran called the police and made a statement to them when they arrived. (T. 98–99.) Duran testified that Jay liked to drink beer, that he never saw Jay fighting or battering anyone, and that he never saw Jay carry a knife. (T. 99–100.) On cross-examination, the defense developed the facts that Duran had a criminal record and was Jay's friend. (T. 111–14.)

The remainder of the People's case consisted of Police Officers Michael Meigh and Chris Acker, who arrived at the scene (T. 145–85); Terry Fraser, a forensic analyst with the Medical Examiner's office, who was necessary to establish the chain of custody of the knife (T. 186–87, 195–203); and Dr. Yury Kogan of the Medical Examiner's Office, who testified that the cause of Jay's death was a stab wound. (T. 204–24, at T. 207.) Dr.

Kogan also testified that there was only a single stab wound (while Duran and Bing had testified that Jay was stabbed twice). (T. 220.) The People then rested. (T. 224.)

Petitioner Vera testified in his own defense. Vera testified that he went to 165th Street and Walton Avenue to see a girl named Wanda. (T. 232–33.) Vera could not remember Wanda's last name. (T. 251.) Jay approached Vera and attempted to hand him something, maybe drugs; when Vera refused, Jay got mad, grabbed Vera and then Jay threw a punch at him. (T. 234, 236, 250.) The people on the block grabbed Vera and Jay, separating them. (T. 236–37.) The people told Vera to get off the block. (T. 237.) As Vera was walking away, he heard footsteps and was punched in the face. (T. 238.) Someone started hitting Vera with a stick, and then Jay broke a beer bottle and, holding it in his left hand, came at Vera and cut his face. (T. 238–39, 242, 263–64.) Vera pulled out his knife and began swinging it around to protect himself, trying to get away. (T. 239, 249, 269–70, 273.) Jay lunged at Vera again with the broken bottle. (T. 241–42.) Vera ducked and stabbed Jay under the armpit. (T. 242–43, 249–50, 264–66.) Vera tried to run away but the other people attacked Vera, hitting him, kicking him and throwing bottles at him. (T. 243–44.) The police then came and Vera gave up his knife. (T. 244.)

On the People's rebuttal case, to rebut Vera's testimony that Jay came at him with a bottle in his left hand, Rosa Jay testified that her brother was right not left-handed. (T. 320.)

### Closing Argument and Jury Instructions

In summation, "[d]efense counsel argued that the People's witnesses were not credible. He maintained that these witnesses were not telling the truth and that their motivation to lie was friendship. ([T.] 331, 339.) What all these witnesses had in common was their desire to help the deceased ([T.] 347). Counsel argued that [Vera] was acting in self-defense ([T.] 349)." (Vera's App.Div. Brief at 17.)

In response, the Assistant District Attorney (Mr. Turkin) defended the People's witnesses' credibility:

Counsel stood before you and intimated you cannot believe these people because it doesn't sound the same. And then intimated that they sat in my office and we went over this. Went over the story.

As I told you before, I don't vouch for my witnesses. I don't vouch for the deceased, Edward Jay. I'm not asking you to invite any of them into your homes for dinner or socialize with these people....

*The fact in issue here is did Manuel Vera stab Edward Jay to death? And the answer to that question is yes.*

*The next question you have to ask, was Manuel Vera justified in stabbing Edward Jay to death? And the answer to that is resoundingly no, there was no justification for this.*

We've eliminated two problems. We know who did it and we know that it is not justified.

Mr. Turkin, how do you say that we know it is not justified? How can we brief [sic; believe] the witnesses that the People brought into this courtroom? How can we believe it when they didn't tell the same story?

It is not my job to tell those people what happened. It was my job to bring those people into the courtroom and for them to tell you what happened. Each of those people relayed a story to you, the series of events that took place on September 23rd, 1989, at about nine o'clock, as best they could relay that story. As they remembered it. It is not my recollection because I wasn't there. I didn't see it. They told me what happened. They then came in here and told you what happened....

But can they be put together? Can we listen to what they have to say and does it make sense?

And I submit to you, ladies and gentlemen, that if you do that, you take the time to examine what took place here, you will see that those people tell, basically, the same story.

(T. 356–58, emphasis added.) Later in summation, the prosecutor commented on the evidence of Vera's intent to kill:

You're going to hear the Judge give you the law and he's going to tell you about intent to cause the death of another person.

How did Mr. Turkin prove intent? Intent is the process of the mind. And I can't tell you how someone's mind works. But you can look at their actions and tell you what was going on in their mind.

When you take a knife and you plunge it into someone's left chest area, that's where the heart is. And that's how you kill people. And that's how this defendant killed Edward Jay....

*This man intended to kill him. He took this knife and he put it in a place where he knew that he would end Edward Jay's life.*

(T. 365–66, emphasis added.)

While defense counsel objected at other points in the People's summation (T. 349, 351, 360, 367), he did not object to the comments quoted above.

The trial judge's interested witness charge was as follows:

An interested witness is one who's personally concerned in the outcome of the trial. It is for you to determine as a question of fact, whether or not witnesses are interested witnesses and to determine what weight and credit they are entitled to.

I charge you, however, that Manuel Vera is an interested witness as a matter of law. The fact that a witness is interested does not mean that such witness is untruthful or that such testimony should not be believed. It is for you to say who you believe has told you the truth. You determine the credibility of witnesses, and when I speak of the credibility of witnesses, I mean the trustworthiness or the truthfulness of the witnesses who have testified. You are the judges of the credibility of each and every witness.

(T. 374–375.) The defense did not object or seek any additional interested witness charge. (T. 393–94.)

### Verdict and Sentence

The jury found Vera not guilty of murder in the second degree, but guilty of man-

slaughter in the first degree. (T. 400.) On November 7, 1990, the court sentenced Vera as a predicate felon to nine to eighteen years of imprisonment. (Sentencing Transcript at 13–14.)

### Vera's State Court Appeals and Federal Habeas Petition

Vera appealed his conviction to the Appellate Division, First Department. (Petition, ¶ 9.) He argued that (1) the state failed to disprove, beyond a reasonable doubt, his justification defense, and (2) he was denied his due process right to a fair trial by (a) the trial court's unbalanced interested witness charge and (b) the prosecutor's expression of his personal belief in Vera's guilt. (Petition, ¶ 9 & Exs. A–B; *see* Vera's App.Div. Brief.)

The Appellate Division affirmed Vera's conviction. *People v. Vera,* 182 A.D.2d 574, 585 N.Y.S.2d 700 (1st Dep't 1992). As to Vera's first claim, the Appellate Division held:

> We find that the People disproved the defense of justification beyond a reasonable doubt. Viewing the evidence in the light most favorable to the prosecution and giving it the benefit of every reasonable inference, the record establishes that defendant could not have reasonably believed that the deceased was using or about to use deadly physical force which would have justified defendant's conduct.

*Id.* at 574–75, 585 N.Y.S.2d at 700 (citations omitted). As to Vera's remaining claims, the Appellate Division held, in full:

> With respect to defendant's remaining claims, *both of which are wholly unpreserved,* reversal is not warranted in the interest of justice. The court's charge on interested witnesses was, on the whole, fair, and made clear that it was up to the jury to determine whether any of the witnesses could be considered "interested" in the outcome of the case. The summation remarks of which the defendant now complains were, when read in context, clearly argument, and could not have been misinterpreted as the personal belief of the prosecutor.

*Id.* at 575, 585 N.Y.S.2d at 700 (emphasis added). The New York Court of Appeals

denied leave to appeal on September 9, 1992. *People v. Vera,* 80 N.Y.2d 935, 589 N.Y.S.2d 862, 603 N.E.2d 967 (1992). (*See also* Petition, ¶ 9(e).)

Vera's pro se habeas corpus petition raises the same issues that were presented to the Appellate Division.

### ANALYSIS

### I. A RATIONAL JURY COULD HAVE FOUND PETITIONER VERA GUILTY OF MANSLAUGHTER BEYOND A REASONABLE DOUBT

██ Petitioner Vera argues that the People's evidence failed to prove every element of the case of first degree manslaughter, and specifically, that the evidence failed to prove beyond a reasonable doubt that he had the requisite intent to cause physical injury. (Vera's "Traverse" Memorandum of Law dated 1/3/96 [hereafter "Traverse Brief"], at 2.) Vera argues that the only evidence of intent—Robin Singleton's testimony that Vera said, "Yo Bubba man, that mother f——er don't know me, don't touch me, I kill that mother f——er." (Vera's Traverse Brief at 2, *citing* T. 32–33)—is incredible because "if petitioner had intended to stab Jay, he would have done so then," *i.e.,* during the first fight. (Vera's Traverse Brief at 2.) Vera also argues that the other eyewitnesses to the fight did not testify to hearing this statement. (*Id.* at 3.) Vera further points out that Duran's testimony supports Vera's, that Vera walked away and was followed by Jay. (*Id.* at 4.) Finally, Vera points to the inconsistencies among the testimony of the People's witnesses, and that all of the eyewitnesses were Jay's friends. (*Id.* at 5–6.) Nevertheless, Vera says his habeas petition "is *not* a challenge based on the credibility of the witnesses," but rather is the absence of evidence of intent. (*Id.* at 6–7.)

██ "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (*quoting In re Win-*

*ship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt ..." *Jackson v. Virginia,* 443 U.S. at 317, 99 S.Ct. at 2788. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2791–92.

Petitioner Vera bears a "very heavy burden":

> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*United States v. Carson,* 702 F.2d 351, 361 (2d Cir.) (citations omitted), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). *Accord, e.g., United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (burden on defendant is " 'very heavy' " and all inferences must be drawn in the government's favor). "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at

2789 (citations omitted); *see also, e.g., Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984).

The "jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss,* 999 F.2d at 696 (citing *United States v. Roman,* 870 F.2d 65, 71 (2d Cir.), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989)). The role of this Court is clear: "[f]ederal habeas courts are not free to reassess the facts specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution." *Anderson v. Senkowski,* No. CV–92–1007, 1992 WL 225576 at *3 (E.D.N.Y.1992) (citations omitted); *Fagon v. Bara,* 717 F.Supp. 976, 979 (E.D.N.Y.1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony.").

Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [Vera's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence.... We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981). The jury here obviously resolved the conflicting versions of events and disbelieved Vera's version. The gist of all the evidence, despite some inconsistencies, is that Vera and Jay fought, were separated, and that in the second altercation, Vera pulled a knife and stabbed Jay. The jury could have, and apparently did, believe the testimony that Jay was unarmed when Vera stabbed him.

With respect specifically to the element of intent, the jury could have credited Singleton's testimony that Vera threatened to kill Jay. Even without that statement, the evidence is sufficient: "Intent may also be inferred from the defendant's conduct and the surrounding circumstances." *Anderson v. Senkowski,* 1992 WL 225576 at *4, *citing People v. Turner,* 141 A.D.2d 878, 878, 529 N.Y.S.2d 898, 899 (2d Dep't 1988). Here, the

jury was free to infer Vera's intent from the very act of his stabbing Jay.

Viewing all the evidence and drawing all reasonable inferences in favor of the prosecution, a rational factfinder could have believed the People's witnesses and found that Vera had the required intent and was guilty beyond a reasonable doubt. His first habeas claim should be denied.

## II. *VERA'S REMAINING CLAIMS ARE NOT REVIEWABLE BY THIS COURT BECAUSE VERA FAILED TO OBJECT AT TRIAL AND THE STATE APPELLATE DECISION WAS BASED ON THAT PROCEDURAL BAR*

■ Petitioner Vera next argues that he was denied his due process right to a fair trial by the prosecutor's improper summation remarks and the trial court's unbalanced interested witness charge, neither of which he objected to at trial.

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.' " *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted); *accord, Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991).

The Appellate Division stated that "with respect to defendant's remaining claims, *both*

of which are wholly unpreserved, reversal is not warranted in the interest of justice," and then explained why that was so. *People v. Vera,* 182 A.D.2d at 574, 585 N.Y.S.2d at 700 (emphasis added).[1] Failure to object at trial is an independent and adequate state procedural bar. N.Y. CPL § 470.05;[2] *see also, e.g., Wainwright v. Sykes,* 433 U.S. 72, 86, 90, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977) (contemporaneous objection rule is an adequate and independent state ground); *Murray v. Carrier,* 477 U.S. 478, 485–92, 497, 106 S.Ct. 2639, 2644–48, 2650, 91 L.Ed.2d 397 (1986) (same), *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (violation of New York's contemporaneous objection rule, N.Y.C.P.L. § 470.05, is an adequate and independent state ground); *Anderson v. Senkawksi,* 1992 WL 225576 at *4 (same).

The People, in their brief to the Appellate Division, argued that Vera's failure to object left those issues unpreserved for appeal, and that in any event, the claims were meritless. (*See* People's App.Div. Brief at 12–17.) It seems clear that the Appellate Division was addressing both of these arguments.

The Supreme Court has made clear that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding." *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989) (emphasis in original). The doctrine "curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Id.*

If the Appellate Division had written that Vera's claims were not preserved for appellate review but that "in any event" the claims were meritless, the procedural bar holding

---

1. In New York, the Appellate Division can, in its discretion, reverse in the interest of justice when the defendant has failed to preserve his rights in accordance with the contemporaneous objection rule. *See* N.Y.C.P.L. § 470.15(6)(a) Practice Commentaries ("Reversals or modifications made as a matter of discretion in the interest of justice ... basically are utilized where an error occurred which, although not preserved as a matter of law, nevertheless resulted in an unfair trial").

2. N.Y. CPL § 470.05(2) states:

For purposes of appeal a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal.

clearly would constitute an adequate and independent state ground precluding habeas review. *See, e.g., Velasquez v. Leonardo*, 898 F.2d at 9, and *People v. Velasquez*, 141 A.D.2d 882, 530 N.Y.S.2d 208 (2d Dep't 1988) ("the issue is not preserved for appellate review ... In any event, we conclude that the instruction" was not improper); *Anderson v. Senkowski*, 1992 WL 225576 at *5 ("The introduction of the discussion on the merits (which followed the disposition on procedural grounds) by the phrase 'in any event' underscores the superfluous nature of that discussion."); *Kirsh v. Michetti*, 787 F.Supp. 403, 406 (S.D.N.Y.1992) (Appellate Division holding of procedural default is independent and adequate ground although decision went on to find that "In any event, the claim is without merit.").

Here, the Appellate Division did not first find procedural default and then, in the next sentence, address the merits "in any event." But the Supreme Court has made clear that state courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, *but we will not impose on state courts the responsibility for using particular language* in every case in which a state prisoner presents a federal claim—every state appeal, every denial of state collateral review—in order that federal courts might not be bothered with reviewing state law and the record in the case.

*Coleman v. Thompson*, 501 U.S. at 739, 111 S.Ct. at 2559 (emphasis added). The Appellate Division's ruling on the merits (in the interest of justice) was an alternative ruling to its holding that Vera's claims were procedurally "wholly unpreserved" for appellate review.[3]

***

[3]. Petitioner argues that the last state court to render a judgment, the New York Court of Appeals, did not "clearly and expressly" state its judgment rested on the procedural bar. The New York Court of Appeals denied petitioner Vera's application for leave to appeal without opinion. *People v. Vera*, 80 N.Y.2d 935, 589 N.Y.S.2d 862, 603 N.E.2d 967 (1992). The Supreme Court addressed this situation in *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115

***

Because there is an adequate and independent state ground for the Appellate Division's decision, petitioner Vera must show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2565. Here, Vera argues that the contradictions in testimony, along with the improper charge and summation remarks, "caused actual prejudice and will certainly result in a fundamental miscarriage of justice." (Vera Traverse Brief at 15.) However, this is an incorrect application of the "cause and prejudice" standard. Vera must show why his counsel did not object to the jury charge and prosecutor's remarks at trial. Cause for a procedural default turns on the petitioner's ability to show that some "objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. Vera has not given any reason why counsel did not object at trial, and "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default." *Id.* at 492, 106 S.Ct. at 2647. Vera has never raised an ineffective assistance of counsel claim. Vera cannot show "cause" for the procedural default.

***

Vera's only remaining argument, and what appears to be his main argument, is that his conviction is a "fundamental miscarriage of justice." In *Murray*, the Supreme Court "remain[ed] confident that, for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" *Id.* at 495, 106 S.Ct. at 2649. However, in an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actu-

***

L.Ed.2d 706 (1991), holding, with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803, 111 S.Ct. at 2594. Vera has presented no facts to rebut that presumption.

ally innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at 496, 106 S.Ct. at 2649.

Vera argues that the combination of these two trial errors along with the inconsistencies in the witnesses' testimony have resulted in a fundamental miscarriage of justice. However, "the alleged constitutional errors neither precluded the development of true facts or resulted in the admission of false ones." *Smith v. Murray,* 477 U.S. 527, 538, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). Moreover, petitioner Vera's argument boils down to a question of the sufficiency of the evidence. As noted above, the evidence was sufficient to support the verdict. Vera offers no evidence that the unpreserved errors resulted in the conviction of one who was innocent.

### CONCLUSION

For the reasons stated above, I recommend that the Court deny Vera's petition for a writ of habeas corpus.

### FILING OF OBJECTIONS TO THIS RE-PORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Batts. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair*

*Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

Dated March 14, 1996.