**Troy ROBINSON, Petitioner,**

v.

**WARDEN of JAMES A. THOMAS CENTER, Respondent.**

**No. 96 CIV. 0866 JES.**

United States District Court,
S.D. New York.

Nov. 19, 1997.

Troy Robinson, Sonyea, NY, Pro Se.

Valerie Singleton, Asst. Atty. Gen., State of New York, Dept. of Law, New York, NY, for defendant.

SPRIZZO, District Judge.

## ORDER

The above-captioned action having come before this Court, and Magistrate Judge Andrew J. Peck having issued a Report and Recommendation to the Court dated August 2, 1996 recommending that Robinson's petition for a writ of habeas corpus be denied, and Petitioner having failed to file any objections to this Report and Recommendation with the Court, and the Court having considered all matters raised, it is

**ORDERED** that the aforementioned Report and Recommendation is hereby adopted, and it is further

**ORDERED** that for the reasons set forth in the Report and Recommendation, Robinson's petition for a writ of habeas corpus shall be and hereby is denied, and it is further

**ORDERED** that the Clerk of Court shall dismiss the above-captioned action with prejudice.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Troy Robinson, also known as Brian Dealle, seeks a writ of habeas corpus, alleging that: (1) seven vials of crack cocaine seized from him as evidence should have been suppressed, because the "[t]estimony of the arresting officers was patently tailored to nullify constitutional objections" (Petition for Writ of Habeas Corpus, dated 12/5/95 ["Petition"], ¶ 12(A)); and (2) the evidence presented by the prosecution was insufficient to prove his intent to sell crack cocaine (Petition ¶ 12(B)). For the reasons set forth below, I recommend that Robinson's petition for a writ of habeas corpus be denied.

## STATEMENT OF FACTS

### Robinson's Arrest

On May 23, 1990, Police Officer Rudolph Gadson was working as a back-up member of a "Tactical Narcotics Team," supervised by Sergeant Michael Joyce, near West 142nd Street and Hamilton Avenue in Manhattan. (*Mapp* Hearing ("MH"), 11/15/90 at 9–10; Trial Transcript, dated 5/10/91 to 5/17/91 ["Tr. 1"], at 340–42, 392–94.) The team arrested James Gill in an unrelated narcotics transaction in front of 509 West 142nd Street. (Tr. 1 at 42–54, 342–50, 398.) The various officers estimated the time of Gill's arrest as between 6:15 and 7:00 p.m. (MH 11/15/90 at 44–45; Tr. 1 at 156, 417.) Officer Gadson walked Gill along W. 142nd Street to an unmarked police car parked on the corner of W. 142nd Street and Hamilton Avenue. (MH 11/15/90 at 13–14; Tr. 1 at 53, 347–50.)

Officer Gadson observed Robinson on Hamilton Avenue talking with another man and engaging in what Gadson had "a hunch" was a drug transaction. (MH 11/15/90 at 15–16, 84; Tr. 1 at 350–53, 371–79, 449–58.) There is conflicting evidence as to when Officer Gadson saw Robinson's drug transaction and when he told his supervisor, Sergeant Joyce, about what he had seen. At a *Mapp* hearing held on November 15, 1990, Gadson stated that he first saw Robinson while walking Gill to the police car. (MH 11/15/90 at 16, 44.) At the February 8, 1991 *Mapp* hearing, Sergeant Joyce testified that Officer Gadson told him he had observed another drug sale on the way to arresting Gill or while they were processing Gill's arrest, but Sergeant Joyce did not remember the precise moment at which Officer Gadson told him of the second sale. (MH 2/8/91 at 11–12, 17, 25–26.) Sergeant Joyce additionally stated that he did not "have a vivid recollection of the case." (*Id.* at 18.) At the end of the February 8, 1991 hearing, Judge Atlas reconciled the discrepancies between Officer Gadson's and Sergeant Joyce's testimony at the hearings, stating that "[t]here is nothing in Sergeant Joyce's testimony which is so inherently inconsistent with Detective Gadson's as to require me to reject Detective Gadson's testimony, and I, therefore, do not reject it." (MH 2/8/91 at 61–65.)

At trial, Sergeant Joyce testified that Officer Gadson informed him of Robinson's sale after Officer Gadson had placed Gill into the police car and walked back along W. 142nd

Street, away from the corner of Hamilton Avenue, to where Joyce was standing. (Tr. 1 at 54, 195.) But Sergeant Joyce did not recall exactly when Officer Gadson told him about the Robinson transaction. (Tr. 1 at 284.) Officer Gadson testified at trial that as he was placing Gill in the car on 142nd Street and Hamilton Avenue, he looked north along Hamilton Avenue and saw Robinson. (Tr. 1 at 350–51.) He testified that he informed Sergeant Joyce of what he saw as he was placing Gill into the car. (Tr. 1 at 455.)

There was also conflicting evidence as to how far Officer Gadson was from Robinson. Officer Gadson testified at the *Mapp* hearing that Robinson stood 40 to 50 feet away from him on Hamilton Avenue. (MH 11/15/90 at 16.) At trial, however, Officer Gadson approximated the distance between him and Robinson as 30 feet. (Tr. 1 at 372, 457.) Robinson's counsel cross-examined Officer Gadson about this discrepancy. (Tr. 1 at 457–58.) Detective Byron McLean, another member of the Narcotics Team, also testified that Robinson stood about 30 feet from the corner of 142nd Street and Hamilton Avenue, where Officers Gadson was located. (Trial Transcript dated 5/21/91 to 5/23/91 ["Tr. 2"] at 91–92.) The testimony of a defense witness, Louis Michael Joyner, estimated the distance as about 15 feet. (Tr. 2 at 170–73, 177, 198.)

Officer Gadson testified that he saw an unidentified man hand money to Robinson. (MH 11/15/90 at 16–17; Tr. 1 at 353, 377–78.) Robinson then reached into his jacket, removed four small objects with red caps, which Officer Gadson believed to be crack cocaine vials, and gave them to the other man. (MH 11/15/90 at 16, 18–20; Tr. 1 at 352–53, 487–88, 502–03.) Officer Gadson further testified that he could see Robinson dropping the vials from his fist one by one, "[l]ike he was counting them," into the buyer's hand. (MH 11/15/90 at 59; Tr. 1 at 378–79.) Officer Gadson admitted that in the initial criminal complaint he referred to a vial, not four vials. (MH 11/15/90 at 70–73; Tr. 1 at 499.)

The buyer then began to walk south on Hamilton Avenue, toward the police officers, but crossed the street and fled north upon seeing the police officers. (MH 11/15/90 at 20–21, 60–69; Tr. 1 at 353–56, 460–63; Tr. 2 at 122.) Sergeant Joyce instructed Officer Hernandez to chase the buyer and Officer Gadson to apprehend Robinson. (Tr. 1 at 207–08, 356–57; Tr. 2 at 39, 61–62, 65–66.)

Officer Hernandez ran after the buyer, but was unable to catch him. (MH 11/15/90 at 23; Tr. 1 at 357, 384; Tr. 2 at 40, 121–22.) Officer Gadson and Officer Hernandez described the buyer as a black male. (Tr. 1 at 463; Tr. 2 at 66.) On cross-examination, Officer Hernandez admitted that at a pretrial meeting with defense counsel in the district attorney's office, Hernandez had indicated that the person he chased was a Hispanic male. (Tr. 2 at 66–69.) Officer Hernandez explained on redirect that at the pretrial meeting he was mistakenly referring to a different chase at the same location, and that he had communicated his error to the assistant district attorney and defense counsel after the meeting. (Tr. 2 at 71–72, 85.)

After leaving Gill in the custody of Sergeant Joyce and other police officers, Officer Gadson approached Robinson and placed him under arrest. (MH 11/15/90 at 60; MH 2/8/91 at 15; Tr. 1 at 195; Tr. 2 at 92.) Officer Gadson searched Robinson and retrieved money and seven red-topped vials containing a substance later determined to be crack cocaine. (MH 11/15/90 at 21–23, 86–87; Tr. 1 at 59–60, 76, 358, 366–67, 505–06; Tr. 2 at 26–27, 92–93.) Officer Gadson testified that the vials recovered were similar to the vials he saw Robinson give to the buyer. (Tr. 1 at 371.)

At the *Mapp* hearing, Officer Gadson first testified that he saw and arrested Robinson at between 6:15 and 6:35 p.m., but upon reviewing his Daily Activity Report revised the time frame to between 6:35 and 7:05 p.m. (MH 11/15/90 at 45, 47–48.) At trial, Officer Gadson placed the sighting and arrest of Robinson at closer to 7:00 p.m., having arrested Gill at between 6:45 and 7:00 p.m. (Tr. 1 at 156, 417.) Officer Gadson admitted on cross-examination to making a mistake at the *Mapp* hearing as to the precise time. (Tr. 1 at 422–27.)

### Robinson's Defense

Defense counsel argued that Officer Gadson mistook a friendly handshake by Robinson with an acquaintance, Louis Michael Joyner, for a drug sale, and that the police officers' lack of credibility also created reasonable doubt. (*E.g.*, Tr. 2 at 259–62.)

Joyner testified for the defense that on the evening of May 23, 1990, he encountered his friend Robinson on Hamilton Avenue between 142nd and 143rd Streets. (Tr. 2 at 137–44.) After stopping to speak with Robinson north of 142nd St., Joyner gave Robinson a "pound", or handshake, and continued walking south along Hamilton Avenue to go to a grocery store. (Tr. 2 at 144–46, 173.) Joyner was stopped and searched by a police officer. (Tr. 2 at 145–47.) The police officer let Joyner go, and Joyner continued to walk south. (Tr. 2 at 147, 149, 199–200.) Joyner saw the police search Robinson. (Tr. 2 at 180–81, 206.)

### PROCEDURAL HISTORY

Robinson was found guilty on May 23, 1991 of criminal possession of a controlled substance in the third degree, in violation of New York Penal Law § 220.16(1).[1] (Tr. 2 at 370–72; *see* Petition ¶ 4.) Robinson was sentenced as a predicate felon to a term of four and one half to nine years in prison. (Sentencing Tr. dated 5/19/92 at 14; *see* Petition ¶ 3.)

Robinson appealed his conviction, alleging that: (1) the drugs seized from him as evidence should have been suppressed because Officer Gadson's testimony that he observed the drug sale from a distance of 40 to 50 feet was incredible as a matter of law; and (2) his intent to sell drugs was not proven beyond a reasonable doubt, as the police testimony was contradictory and incredible. (Petition Appendix: Brief for Defendant–Appellant to App. Div., dated 8/94, at 2.)

On April 11, 1995, the Appellate Division, First Department, affirmed Robinson's conviction. *People v. Dealle*, 214 A.D.2d 350, 625 N.Y.S.2d 493 (1st Dep't 1995). On June 19, 1995, the New York Court of Appeals denied leave to appeal. *People v. Dealle*, 86 N.Y.2d 734, 655 N.E.2d 711, 631 N.Y.S.2d 614 (1995).

Presently before the Court is Robinson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Robinson has exhausted his state remedies as to these claims, and thus the Court will consider his petition on the merits. 28 U.S.C. § 2254(b).[2]

### ANALYSIS

### I. THE COURT IS PRECLUDED FROM REVIEWING ROBINSON'S FOURTH AMENDMENT SEARCH AND SEIZURE CLAIM

Robinson's first claim challenges the propriety of the search and seizure of evidence leading to his subsequent conviction. (Petition, ¶ 12(A).) Robinson questions Officer Gadson's basis for probable cause for his arrest and search, and points out discrepancies between Officer Gadson's and Sergeant Joyce's testimony at the *Mapp* hearing and at trial. (*Id.*) Because this claim alleges a Fourth Amendment violation, federal habeas review of the claim is precluded:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at the trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the

---

1. NYPL § 220.16(1) states: "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses: (1) a narcotic drug with intent to sell it. . . ."

2. Because the Court recommends that Robinson's petition be dismissed on the merits, the Court need not address the effect, if any, of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No. 104–132, 110 Stat. 1214), on non-capital case habeas corpus petitions, such as Robinson's, filed and pending before the Act's April 24, 1996 enactment. A Second Circuit panel has decided that the Antiterrorism Act "does not apply retroactively to habeas corpus petitions not involving death sentences filed prior to the statute's enactment." *Boria v. Keane*, 90 F.3d 36, 37 (2d Cir. 1996); *see also Reyes v. Keane*, 90 F.3d 676 (2d Cir.1996).

substantial societal costs of application of the rule persist with special force. *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 3052–53, 49 L.Ed.2d 1067 (1976); *accord, e.g., Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991); *Plunkett v. Johnson,* 828 F.2d 954, 956 (2d Cir.1987).

Robinson does not contend that the State denied him an opportunity to litigate the search and seizure issue. Robinson had the opportunity to litigate this claim at the state level, and did so vigorously. He had two pretrial *Mapp* suppression hearings. (MH 11/15/90 & 2/8/91.) At trial, in his opening statement, Robinson's attorney specifically mentioned the inconsistencies in the police testimony. (Tr. 1 at 20–22.) Defense counsel cross-examined Officer Gadson and Sergeant Joyce at length at trial to bring out the discrepancies. (*E.g.,* Tr. 1 at 139–70, 175–271, 287–311, 386–504.) Defense counsel reiterated this claim in his closing argument. (Tr. 2 at 253–98.) Defense counsel also moved to reopen the *Mapp* suppression hearing during the trial outside the jury's presence. (Tr. 1 at 510–60.) Robinson also raised the suppression issue before the Appellate Division on direct appeal. *See People v. Dealle,* 214 A.D.2d at 350, 625 N.Y.S.2d at 493.

Because Robinson fails to prove or even allege that the State did not provide him the opportunity to fully and fairly litigate his Fourth Amendment claim, that habeas claim should be dismissed.[3]

## II. *THE EVIDENCE ADDUCED AT TRIAL WAS SUFFICIENT TO PROVE ROBINSON'S INTENT TO SELL DRUGS*

■ Robinson's second habeas claim contends that his intent to sell drugs, a requisite element of NYPL § 220.16(1), was not proven beyond a reasonable doubt. (Petition, ¶ 12(B).) To support this claim, Robinson asserts that Officer Gadson's testimony was implausible and contradictory. (*Id.*) A review of the testimony, however, leads to the conclusion that a reasonable jury could have found Robinson guilty beyond a reasonable doubt of possession of crack with intent to sell.

■ "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (*quoting In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt ...." *Jackson v. Virginia,* 443 U.S. at 317, 99 S.Ct. at 2788. Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 324, 99 S.Ct. at 2791–92.

Petitioner Robinson bears a "very heavy burden":

[T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable in-

---

**3.** Even if the Court were to reach the merits, Robinson's Fourth Amendment claim would not succeed. The minor inconsistencies between Sergeant Joyce and Officer Gadson's testimony at the *Mapp* hearing and at trial are insufficient to warrant suppression of the evidence seized or to overturn Robinson's conviction.

At the *Mapp* Hearing on February 8, 1991, Judge Atlas recognized the discrepancies between Officer Gadson's and Sergeant Joyce's testimony. (MH 2/8/91 at 59–67.) Judge Atlas determined that despite these inconsistencies,

the testimony of the two officers was indeed reconcilable, and none of their testimony was so inherently inconsistent as to require rejection of either officer's testimony. (*Id.* at 63–67.) In fact, the basic scenario described by Sergeant Joyce bolstered Officer Gadson's testimony. Sergeant Joyce confirmed that Officer Gadson at some point told him of seeing another narcotics sale, and actually placed Robinson closer to Gadson than Gadson himself had. (*See* MH 2/8/91 at 5–20.)

ferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*United States v. Carson,* 702 F.2d 351, 361 (2nd Cir.1983) (citations omitted), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983). *Accord, e.g., United States v. Strauss,* 999 F.2d 692, 696 (2d Cir. 1993) (burden on defendant is " 'very heavy' " and all inferences must be drawn in the government's favor); *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.). "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2789 (citations omitted); *see also, e.g., Mallette v. Scully,* 752 F.2d 26, 31 (2d Cir.1984); *Vera v. Hanslmaier,* 928 F.Supp. at 284.

Robinson points out that Officer Gadson's testimony differed between the original criminal complaint, the *Mapp* hearings and trial. (*See* Petition ¶ 12(B).) Officer Gadson swore in the criminal complaint that he had seen Robinson give a buyer a vial of crack, but at the *Mapp* hearing and at trial Officer Gadson testified that he saw Robinson give four vials to the buyer. (MH 11/15/90 at 16, 18–20, 72–73; Tr. 1 at 353, 378–79, 487–88, 499.) At trial, Officer Gadson clarified the original distance between himself and Robinson as 30 feet, as opposed to the 40 to 50 feet to which he had testified at the *Mapp* hearing. (MH 11/15/90 at 16; Tr. 1 at 372, 457.) *See United States v. Birrell,* 447 F.2d 1168, 1173 (2d Cir.1971) (Where inconsistency in testimony was minor and "all that was involved was faulty memory on a comparatively insignifi-

cant point," inconsistency was a jury question that does not create a "reasonable doubt as to the defendant's guilt as a matter of law."), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 675, 30 L.Ed.2d 675 (1972). Robinson also questions Officer Gadson's characterization of his observation as a "hunch" that a drug deal was occurring. (Petition, ¶ 12(A)—(B).) Instead, Robinson maintains that Officer Gadson mistook a "pound," or handshake, with a friend for a drug transaction. (*E.g.,* Petition, ¶ 12(B); Tr. 2 at 144.) Officer Gadson is an experienced officer who had made over 150 narcotics arrests prior to arresting Robinson. (MH 11/15/90 at 24–25; Tr. 1 at 387–88.) He is well versed in the methods and characteristics of narcotic sales. (Tr. 1 at 493–96, 501.) With a clear view up Hamilton Avenue (Tr. 1 at 350), it is entirely plausible for Officer Gadson to have seen vials with prominent red tops being exchanged. His "hunch" was therefore an educated and well-founded interpretation of the events which he viewed.

■ The alleged inconsistencies were placed before the jury by the defense, which made that a central focus of its case. The jury's decision to credit Officer Gadson's testimony despite any inconsistencies is fully supported by the record. The "jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss,* 999 F.2d at 696 (*citing United States v. Roman,* 870 F.2d 65, 71 (2d Cir.), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989)). The role of this Court is clear: " '[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.' " *Vera v. Hanslmaier,* 928 F.Supp. at 284 (quoting *Anderson v. Senkowski,* No. CV–92–1007, 1992 WL 225576 at *3 (E.D.N.Y.1992)); *see also, e.g., Fagon v. Bara,* 717 F.Supp. 976, 979 (E.D.N.Y.1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony."). Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [Robinson's] version of the events or to believe

the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence.... We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981). The jury here obviously resolved the conflicting versions of events and disbelieved Robinson's version. The gist of the prosecution's evidence, despite inconsistencies, is that Officer Gadson saw Robinson pass vials that resembled crack vials to someone in return for money, and that Officer Gadson's search of Robinson turned up seven similar vials that did contain crack cocaine. The jury could have, and apparently did, believe the police testimony and disbelieved the testimony of Robinson's friend.

"Intent may also be inferred from the defendant's conduct and the surrounding circumstances." *Anderson v. Senkowski,* 1992 WL 225576 at *4 (*citing People v. Turner,* 141 A.D.2d 878, 878, 529 N.Y.S.2d 898, 899 (2d Dep't 1988)). The jury was free to infer Robinson's intent to sell from his possession of seven vials of crack and from Officer Gadson's testimony that he saw Robinson exchange similar vials for money. *See, e.g., United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir.1995); *United States v. Garcia,* 848 F.2d 1324, 1336 (2d Cir.1988) (fact that defendant, when arrested, possessed a beeper, $2,000 in cash, a small amount of drugs and drug paraphernalia, "as well as the reasonable inferences arising from it, supports the jury's finding that [defendant] was a knowing participant in" a drug conspiracy).

Indeed, the issue is not really whether there is evidence to prove Robinson's intent but whether the police testimony is so incredible as to be unworthy of belief. Assuming, as the Court must, that the jury believed the police testimony, intent is clearly proven.

### CONCLUSION

For the reasons set forth above, I recommend that this Court deny Robinson's habeas corpus petition.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John E. Sprizzo, 40 Centre Street, Room 2201, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Sprizzo. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

August 2, 1996.